Jim DARBY, individually and on behalf of all others similarly situated, Plaintiff,

Joe Marsh; Lee Marshall, Plaintiffs–Appellants,

v.

CENTURY BUSINESS SERVICES, INC.; Michael G. Degroote; Keith W. Reeves; Charles D. Hamm, Jr.; Craig L. Stout; Gregory J. Skoda; Edward F. Feighan; Douglas R. Gowland; Fred M. Winkler; Jerome P. Grisko, Defendants–Appellees.

No. 02–3784.

United States Court of Appeals, Sixth Circuit.

March 30, 2004.

Christopher Lovell, Lovell & Steward, New York, NY, for Plaintiffs–Appellants.

David H. Kistenbroker, Pamela G. Smith, Theresa L. Davis, Katten, Muchin & Zavis, Chicago, IL, Wayne C. Dabb, Baker & Hostetler, Cleveland, OH, for Defendants–Appellees.

Before BATCHELDER, GIBBONS, and COOK, Circuit Judges.

GIBBONS, Circuit Judge.

Century Business Services ("CBIZ") originated in 1997 as a business providing accounting services, payroll services, tax advising and planning services, employee benefits design and administration services, and related business services. Plaintiffs, who are individuals that purchased CBIZ shares on the NASDAQ stock exchange between February 6, 1998, and January 28, 2000, brought a class action suit against CBIZ and its directors for alleged violations of Sections 10(b) and 20(a) of the Securities and Exchange Act of 1934 ("Exchange Act"). Plaintiffs alleged *inter alia* (1) that CBIZ failed to disclose that the company's Chairman of the Board had entered into a settlement agreement with the Ontario Securities Commission ("OSC") before joining CBIZ and (2) that the company made misrepresentations about the value of CBIZ stock, the proper period over which to amortize the goodwill of acquired companies, the calculation of revenue run rates, and CBIZ's management practices.

The defendants, CBIZ and its officers and directors, moved to dismiss the plaintiffs' consolidated class action complaint. The district court granted defendants' motion because plaintiffs failed to meet the pleading requirements of the Private Securities Litigation Reform Act ("PSLRA"). Plaintiffs now appeal the grant of defendants' motion to dismiss. We affirm the judgment of the district court.

## I.

Michael DeGroote has been Chief Executive Officer of CBIZ, a Delaware corporation with its principal place of business in Ohio, since April 1995. During his tenure with CBIZ, DeGroote also, at times, served as the company's President. Prior to joining CBIZ, DeGroote was Chairman and Chief Executive Officer of Laidlaw, Inc., a publicly traded Canadian company. In 1993, the Ontario Securities Commission determined that DeGroote improperly sold short shares of Laidlaw and ordered DeGroote and two other individuals collectively to pay a penalty of twenty-three million dollars. DeGroote later became Chairman of the Board of the predecessor company to CBIZ. On December 1, 1997, CBIZ came into existence, and the company's stock began to trade on the NASDAQ stock exchange with DeGroote, now Chairman of the Board of CBIZ, holding 30.16% of the company's outstanding shares.

Plaintiffs filed a consolidated class action complaint against CBIZ and its directors for alleged violations of Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Section 20(a) of the Act, 15 U.S.C. § 78t(a). Defendants filed a motion to dismiss this complaint pursuant to Fed. R.Civ.P. 12(b)(6), and the district court granted the motion after finding that plaintiffs failed to plead scienter in accordance with the PSLRA.

Even though the district court concluded that the complaint must be dismissed for failure to plead scienter adequately, which

is required to state a claim under Section 10(b), the court also found that the complaint should be dismissed for additional reasons. Specifically, the district court determined that plaintiffs failed to set forth with particularity false or misleading statements made by the defendants, as required by the PSLRA, and failed to plead fraud with particularity under Fed. R.Civ.P. 9(b). As a result of dismissing plaintiffs' claims under Section 10(b), the district court also dismissed plaintiffs' claims under Section 20(a), which imposes liability on controlling persons for primary violations of the Exchange Act. Finally, the district court denied plaintiffs' request for leave to amend their complaint. In doing so, the court noted that the plaintiffs did not provide any proposed amendment indicating what new facts they might allege and did not file a written motion to amend their complaint. Plaintiffs subsequently filed a timely notice of appeal.

## II.

This court reviews questions of statutory interpretation, including interpretation of the PSLRA, *de novo*. *Miller v. Champion Enters., Inc.*, 346 F.3d 660, 671 (6th Cir.2003). We also consider the dismissal of a complaint under Rule 12(b)(6) for failure to state a claim *de novo*. *Id.* "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). "The facts set forth in the complaint must be accepted as true, so long as they are well pleaded." *Miller*, 346 F.3d at 671. While the standard for dismissal of a claim under Rule 12(b)(6) is quite liberal, "more than bare assertions of legal conclusions is ordinarily required to satisfy federal notice pleading requirements." *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988). Pursuant to this requirement, "a complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory." *Id.* (internal quotation and alteration omitted).

In their complaint, plaintiffs allege violations of Section 10(b) of the Exchange Act, which makes it unlawful, directly or indirectly,

> by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange ... [t]o use or employ, in connection with the purchase or sale of any security ... any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

15 U.S.C. § 78j(b). Rule 10b–5, which was promulgated under Section 10(b), provides:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange, (a) [t]o employ any device, scheme, or artifice to defraud, (b) [t]o make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or (c) [t]o engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b–5. From these statutory provisions, we have said that in order to state a claim under Section 10(b) and

Rule 10b–5, "a plaintiff must allege, in connection with the purchase or sale of securities, the misstatement or omission of a material fact, made with scienter, upon which the plaintiff justifiably relied and which proximately caused the plaintiff's injury." *In re Comshare, Inc. Sec. Litig.*, 183 F.3d 542, 548 (6th Cir.1999).

The PSLRA provides heightened pleading requirements for a private securities action seeking monetary damages. For instance, when plaintiffs allege that defendants made untrue statements or omissions of material fact, the PSLRA requires that the complaint "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u–4(b)(1). In addition, the PSLRA requires that— with respect to each act or omission alleged to have violated federal securities laws—the complaint "state *with particularity* facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u–4(b)(2) (emphasis added). In *Helwig v. Vencor, Inc.*, 251 F.3d 540, 553 (6th Cir. 2001) (en banc), we described how a plaintiff pleads facts sufficient to meet this PSLRA requirement:

Inferences must be reasonable and strong—but not irrefutable. "Strong inferences" nonetheless involve deductive reasoning; their strength depends on how closely a conclusion of misconduct follows from a plaintiff's proposition of fact. Plaintiffs need not foreclose all other characterizations of fact, as the task of weighing contrary accounts is reserved for the fact finder. Rather, the "strong inference" requirement means that plaintiffs are entitled only to the most plausible of competing inferences.

Scienter, defined as "a mental state embracing intent to deceive, manipulate, or defraud," is the required state of mind for a claim brought under Section 10(b) and Rule 10b–5. *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 & n. 12, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976). This court has recognized that recklessness constitutes sufficient scienter for liability under Section 10(b).[1] *Mansbach v. Prescott, Ball & Turben*, 598 F.2d 1017, 1024 (6th Cir.1979). Recklessness is "highly unreasonable conduct which is an extreme departure from the standards of ordinary care." *Id.* at 1025.

## III.

In this case, plaintiffs appeal the district court's decision that they failed to meet

---

1. In addition, we have identified the following factors as relevant to scienter:

    (1) insider trading at a suspicious time or in an unusual amount;

    (2) divergence between internal reports and external statements on the same subject;

    (3) closeness in time of an allegedly fraudulent statement or omission and the later disclosure of inconsistent information;

    (4) evidence of bribery by a top company official;

    (5) existence of an ancillary lawsuit charging fraud by a company and the company's quick settlement of that suit;

    (6) disregard of the most current factual information before making statements;

    (7) disclosure of accounting information in such a way that its negative implications could only be understood by someone with a high degree of sophistication;

    (8) the personal interest of certain directors in not informing disinterested directors of an impending sale of stock; and

    (9) the self-interested motivation of defendants *in the form of saving their salaries or jobs.*

    *Helwig,* 251 F.3d at 552.

the pleading requirements of the PSLRA with regard to: (1) DeGroote's background; (2) CBIZ's stock price; (3) the appropriate period for amortization of the goodwill of acquired companies; (4) the calculation of revenue run rates; and (5) CBIZ's management practices. Plaintiffs also appeal the denial of their request for leave to amend their complaint. For the following reasons, we affirm the district court's judgment on all of these issues.

## A.

■ In their consolidated complaint, plaintiffs stated that prior to his joining CBIZ, DeGroote was among a group of individuals assessed a twenty-three million dollar penalty by the OSC for improperly short selling, passing along inside information, and concealing DeGroote's involvement with these transactions. Furthermore, the complaint stated, "defendant DeGroote, who defendants represented during the Class Period to have a sterling business record with Laidlaw and other companies, had, in fact, paid the largest insider trading fine in the history of Canada and was a shady operator through offshore accounts." Plaintiffs attached a copy of the OSC settlement agreement to their complaint, but the complaint did not present any additional facts with respect to this issue.[2]

Plaintiffs' allegation with respect to DeGroote fails to meet the heightened pleading standard of the PSLRA. Plaintiffs' complaint does not list a single statement alleged to be misleading. Rather, plaintiffs only present a general accusation that defendants misrepresented DeGroote to have a sterling business record. As such,

plaintiffs' complaint fails to plead misstatements about DeGroote's business record with the requisite particularity, making dismissal of this claim appropriate. *See* 15 U.S.C. § 78u–4(b)(1). Because we conclude that plaintiffs have failed to plead this issue with the specificity required by the PSLRA, we do not need to consider whether plaintiffs' claim about DeGroote's background was pled sufficiently in other respects.

## B.

■ Besides alleging that defendants misrepresented DeGroote's background, plaintiffs also allege that DeGroote and CBIZ improperly inflated CBIZ's stock price. Plaintiffs argue that they pled scienter on this issue by claiming that defendants had a personal and corporate motive to raise the price of CBIZ shares. As the plaintiffs' complaint explains,

[b]etween February 6, 1998, and January 28, 2000 ("Class Period"), defendants DeGroote and CBIZ engaged in a scheme and artifice to inflate and manipulate the price of CBIZ stock. Their objective and financial *motive* for this scheme were [sic] to hyper-inflate CBIZ's growth from acquisitions by making the currency for those acquisitions (CBIZ's shares) more valuable, and to achieve large profits on DeGroote's 15 million-plus shares of Century stock. . . .

Defendants were *motivated* to conceal the true facts concerning CBIZ's financial condition because the Company was dependant on its "soaring" stock price to convince independent business service firms to sell out to CBIZ and accept

---

2. The only other mention of DeGroote in plaintiffs' filings was in their memorandum in opposition to defendants' motion to dismiss, which stated, "[a]lthough defendants never admitted that they had failed to disclose rele-

vant facts about DeGroote's background, there can be no doubt that DeGroote and, by imputation, CBIZ knew that DeGroote had entered into the Settlement Agreement [with the OSC] annexed to the complaint."

CBIZ's common stock as consideration for the Company's acquisitions.

(emphasis added). In essence, plaintiffs assert that DeGroote and CBIZ had a motive to inflate the company's stock price, namely to make corporate acquisitions with CBIZ stock more affordable, as well as the opportunity to do so.

We addressed the sufficiency of "motive and opportunity" arguments to plead scienter under the PSLRA in *Comshare,* where we held:

> While facts regarding motive and opportunity may be relevant to pleading circumstances from which a strong inference of fraudulent scienter may be inferred, and may, on occasion, rise to the level of creating a strong inference of reckless or knowing conduct, the bare pleading of motive and opportunity does not, standing alone, constitute the pleading of a strong inference of scienter. Thus, under a plain interpretation of the PSLRA as informed by well-settled law on the contours of the "scienter" requirement, we hold that plaintiffs may meet PSLRA pleading requirements by alleging facts that give rise to a strong inference of reckless behavior but not by alleging facts that illustrate nothing more than a defendant's motive and opportunity to commit fraud.

*Comshare,* 183 F.3d at 551 (internal citation and quotation omitted). Discussing the court's opinion in *Comshare,* the opinion for the *en banc* court in *Helwig* stated that motive and opportunity "can be catalysts to fraud and so serve as external markers to the required state of mind. *Comshare* made this distinction by refusing to equate motive and opportunity with scienter but yet recognizing that facts showing each may support a strong inference of recklessness." *Helwig,* 251 F.3d at 550. The *Helwig* court further explained:

> Whether the facts can be said to establish motive, opportunity, or neither, we are directed only to consider whether they produce a strong inference that the defendant acted at least recklessly.... Accordingly, facts presenting motive and opportunity may be of enough weight to state a claim under the PSLRA, whereas pleading conclusory labels of motive and opportunity will not suffice.

*Id.* at 551.

In light of *Helwig* and its explanation of *Comshare,* we conclude that plaintiffs failed to plead scienter with respect to their claim concerning CBIZ's stock price. Plaintiffs demonstrated that defendants could benefit from the inflation of CBIZ's stock price—by reducing the cost of acquisitions paid for with CBIZ stock—but did not state facts that give rise to "a strong inference of reckless behavior." *See Comshare,* 183 F.3d at 551.

### C.

■ Plaintiffs' next claim presents two allegations concerning the amortization of goodwill by CBIZ. First, plaintiffs allege that CBIZ concealed material facts indicating the amortization periods disclosed by defendants were improper. According to plaintiffs' complaint, CBIZ's 1997 Form 10–K listed an amortization period for goodwill as not to exceed thirty years, and the company's 1998 Form 10–K stated that CBIZ's amortization period for goodwill would not exceed forty years. Plaintiffs claim that CBIZ did not divulge employment agreements that were less than five years in duration and payout and option agreements that were two years or less in duration. As a result, plaintiffs allege that CBIZ's thirty and forty year amortization periods over-estimated the life of goodwill, which resulted in understating amortization expenses and overstating reported earnings.

Second, plaintiffs allege that CBIZ adjusted its amortization period in 1999 and then misrepresented the reasons for doing so. On December 30, 1999, CBIZ filed a statement of material event on Form 8–K, which indicated that CBIZ was shortening its goodwill amortization period from forty years to fifteen years on a prospective basis. CBIZ later filed another Form 8–K, which essentially explained that the company shortened its amortization period because the new period correlated with industry practice and the position of the Securities and Exchange Commission. Plaintiffs contend that all of this evidence supports an inference of recklessness because defendants initially chose an inappropriate amortization period and then contrived reasons for later reducing the amortization period. Plaintiffs also assert that CBIZ's failure to reduce the time of amortization of goodwill was in violation of standard accounting practices.

On these issues, plaintiffs have provided only conclusory assertions and speculation as to the rationale behind CBIZ's selection of amortization periods. Plaintiffs' complaint indicates that in the late 1990s, CBIZ changed the period over which it amortized goodwill, but plaintiffs only assert—without supporting the assertion with additional facts—that these changes were improper or reckless. Such pleading is insufficient to meet the requirements of the PSLRA. *See Comshare*, 183 F.3d at 553 ("[C]laims of securities fraud cannot rest on speculation and conclusory allegations.") (internal quotation omitted). Plaintiffs have not presented facts related to their allegations that give rise to a strong inference of at least recklessness, which is defined as "highly unreasonable conduct which is an extreme departure from the standards of ordinary care." *See Mansbach*, 598 F.2d at 1025 (providing recklessness standard and noting that "[w]hile the danger need not be known, [recklessness] must at least be so obvious that any reasonable man would have known of it"). In addition, with respect to plaintiffs' claim that CBIZ's amortization errors violated standard accounting practices, "[t]he failure to follow [generally accepted accounting principles] is, by itself, insufficient to state a securities fraud claim." *Comshare*, 183 F.3d at 553. Accordingly, we conclude that plaintiffs have failed to plead scienter as required by the PSLRA with regard to this issue.[3]

## D.

Plaintiffs also argue that defendants knew or were reckless in not knowing that analysts overestimated CBIZ's earnings because of misleading revenue run rate information supplied by CBIZ. To support their claim, plaintiffs point to a November 20, 1998, letter in which CBIZ chief financial officer Charles Hamm, Jr. states:

> With regard to our 1997 Form 10–K, it was stated in Note 2 that pro forma revenue on a historical basis was $188.8 million, including all acquisitions made during the year. Per GAAP, the revenue of Environmental and Commercial Insurance Agency, Inc. (Approximately $10 million), which was disposed of in

---

**3.** Besides finding that plaintiffs failed to plead scienter adequately, the district court also found that plaintiffs' allegations concerning CBIZ's amortization periods were not pled with particularity as required by the PSLRA and Fed.R.Civ.P. 9(b). Plaintiffs' brief on appeal summarily challenges this finding by asserting that plaintiffs have met these pleading requirements to the extent possible. Since we have concluded that plaintiffs did not plead scienter—a required element of their securities fraud claim—sufficiently, we do not need to decide whether plaintiffs have met the additional pleading requirements of the PSLRA and Rule 9(b).

December of 1997, as discussed in Note 15 of the Form 10-K, was required to be included in the historical revenue in Note 2. Therefore, the December 31, 1997 historical pro forma revenue was $178.8 million, reflecting this disposition. CBIZ's revenue run rate as described on page 16 of our strategic overview of "more than $400 million" is approximately $415 million and is a historical revenue run rate including all closed acquisitions through November 4, 1998. CBIZ's 1998 closed acquisition revenue number is stated on page 8 of the same document as "more than $245 million." This represents the acquisitions' historical revenue and factors in each acquisition's expected growth. The historical annual revenue for the 1998 closed acquisitions was approximately $212 million.

We apologize for any confusion this may have caused.

Plaintiffs argue that from this letter we can infer that CBIZ's 1997 revenue information misled analysts, evidence that the plaintiffs claim supports a finding of recklessness by CBIZ.

Plaintiffs' allegation that the calculation of CBIZ's revenue information was misleading based only on the company's November 1998 clarifying letter does not give rise to a strong inference that defendants acted with sufficient scienter. "Mere allegations that statements in one report should have been made in earlier reports do not make out a claim of securities fraud." *Stevelman v. Alias Research Inc.*, 174 F.3d 79, 84 (2d Cir.1999) (rejecting claim that company's subsequent revelation of a change in accounting policy and retroactive announcement of lowered earnings was probative of conscious misbehavior or recklessness in order to plead scienter) (quoting *Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 53 (2d Cir.1995)); *see also*

*Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1129 (2d Cir.1994) (rejecting claim that defendants acted with scienter because they "knew or were reckless in not knowing" that loan loss reserve was inadequate because plaintiff did "not allege facts that would give rise to a strong inference that defendants knew or recklessly disregarded the fact that the loan loss reserve was inadequate" and instead pled conclusory allegations). Therefore, plaintiffs' claim concerning CBIZ's revenue run rates does not produce a strong inference that defendants acted at least recklessly.

**E.**

■ Finally, plaintiffs allege that DeGroote made false statements concerning CBIZ's management practices and operational procedures. In order to plead this matter in their complaint, plaintiffs cited two statements made concerning CBIZ's operations. First, in a July 27, 1999, press release, CBIZ announced, "[o]ur initiatives over the past several months to enhance our organizational and professional management structure and put more emphasis on internal growth—while costly and time-consuming—have put CBIZ on a solid footing for continued rapid growth. CBIZ now has the management structure to run a much larger organization." Second, in a December 28, 1999, press release, CBIZ stated: "We're running the Company as we should and we're not letting that [strategic alliance] interfere with our day to day running of the company." (alteration in original).

Plaintiffs contrast these statements with later statements made by DeGroote on January 31, 2000, including: "The fact is that the lack of focus by top management and perhaps any business leaders let expenses get out of line, obviously off of budget in terms of revenue as well." In addition, according to plaintiffs' complaint,

[i]n a conference call on January 31, 2000, defendants DeGroote and Hamm further admitted for the first time that CBIZ's financial reporting system was so grossly inadequate and deficient that monthly financial results were not available to management until the 20th to 25th day of the succeeding month, and that CBIZ did not have in place a centralized management group for reviewing whether the businesses were varying from their plans and budgets.

Plaintiffs assert that the contrast between the 1999 statements and the January 2000 statements sufficiently indicates that defendants knew that the misrepresentations made about CBIZ's financial condition were misleading or that they were reckless in not knowing that they were making misleading statements. Plaintiffs consequently argue that they have pled scienter on this issue.

The plaintiffs' claim is unavailing. Even if we were to assume that CBIZ's later statements contradicted the company's earlier ones, we noted in *Comshare* that "a subsequent revelation of the falsehood of previous statements" does not necessarily imply scienter, since, as previously discussed, " '[m]ere allegations that statements in one report should have been made in earlier reports do not make out a claim of securities fraud.' " 183 F.3d at 553 (quoting *Stevelman*, 174 F.3d at 84) (alteration in original); *see also Abrams v. Baker Hughes Inc.*, 292 F.3d 424, 431–32 (5th Cir.2002) (holding that plaintiffs did not plead scienter sufficiently when plaintiffs alleged that company told investing community that there were "no accounting issues" and later that year announced existence of accounting irregularities at one of its major subsidiaries). With respect to CBIZ's management practices, plaintiffs have not plead scienter as required by the PSLRA in order to survive a motion to dismiss.

Since plaintiffs have failed to meet the pleading standards of the PSLRA, we affirm the district court's dismissal of plaintiffs' claims brought pursuant to Section 10(b) of the Exchange Act and Rule 10b–5. Accordingly, we also affirm the district court's dismissal of plaintiffs' Section 20(a) claim, since Section 20(a) requires a primary violation of the Exchange Act to impose liability.

## IV.

■ Because we affirm the dismissal of plaintiffs' complaint, we next consider the district court's denial of plaintiffs' request for leave to amend their complaint. The district court provided several justifications for denying plaintiffs' request. The court considered that plaintiffs first indicated a desire to amend their complaint at oral argument before the district court and that plaintiffs did not inform the court of what new facts they would allege in an amended complaint. The district court also decided that permitting plaintiffs to amend their complaint would be futile because it was unlikely plaintiffs would be able to correct the complaint's multiple deficiencies. We review a denial of leave to amend generally for abuse of discretion and a denial on the ground of futility *de novo*. *Miller*, 346 F.3d at 671.

"As a general matter, leave to amend 'should be freely given when justice so requires.' " *Id.* at 689 (quoting Fed. R.Civ.P. 15(a)). Notwithstanding this principle, the PSLRA—which instructs that a complaint should be dismissed if the pleading requirements are not met—limits the scope of Fed.R.Civ.P. 15(a) and restricts the ability of plaintiffs to amend their complaint. *Id.* at 692; *see also* 15 U.S.C. § 78u–4(b)(3)(A) (PSLRA provision discussing motion to dismiss). In view of the fact that plaintiffs have failed to articu-

late what additional facts they would allege or how an amended complaint would comport with the PSLRA's pleading requirements, the district court's decision was not an abuse of discretion.

### V.

For all the foregoing reasons, we affirm the judgment of the district court dismissing this case.